IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DONALD ORESTE ROYALE, | ) | |
| ID # 1127647, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:04-CV-1448-K (BH) |
| | ) | ECF |
| NATHANIEL QUARTERMAN,[1] Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge.  The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

### A.  Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge (1) his guilty plea to aggravated robbery in Cause No. 17,215 that resulted in his placement on deferred adjudication probation; (2) the subsequent revocation of his probation and adjudication of guilt; and (3) the resulting twenty-five year sentence. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

---

[1] On June 1, 2006, Nathaniel Quarterman became the Director of the Texas Department of Criminal Justice - Correctional Institutions Division.  The Court thus substitutes him for Douglas Dretke.  *See* Fed. R. Civ. P. 25(d)(1).

**B.  Procedural and Factual History**

In January 1993, the State indicted petitioner for aggravated robbery.  CR[2] at 8-9 (indict-

ment).  For purposes of enhancing the sentence for the charged crime, paragraphs two and three of

the indictment alleged two prior felony convictions – a 1983 burglary conviction in California and

a 1984 burglary of a habitation conviction in Hunt County, Texas.[3]  *Id.* at 9.  On September 12,

1994, after petitioner pled guilty to aggravated robbery, the court placed him on ten years deferred

adjudication probation.  *Id.* at 11 (judgment).  Petitioner did not appeal that placement.

On May 1, 2002, the State filed its fourth motion to revoke petitioner's probation and

requested final adjudication of his offense.  *Id.* at 18.  On September  4, 2002, the trial court

conducted a joint revocation and sentencing hearing by agreement of the parties.  *See* Rep.'s R., Vol.

I at 8 [hereinafter cited as RR-volume # at page].  The State presented one witness, petitioner's

probation officer, who  recommended that the court revoke petitioner's probation.  *Id.* at 10-12, 14.

On cross-examination, he also testified that petitioner "fits the definition of the relapse program"

of the Substance Abuse Felony Program (SAFP), and recognized that petitioner had been "in the

mental health program through Hunt County Family Services."  *Id.* at 20.

Petitioner testified and called three witnesses – his most recent counselor, Kirk[4] Pittan; his

mother, and a friend.  *See id.* at 25-60.  The counselor testified that petitioner was "extremely

---

[2]  "CR" refers to the Clerk's Record in Cause No. 17, 215.

[3]  The parties often refer to these paragraphs as the second and third enhancement paragraphs, and the Court will
likewise refer to them.

[4]  Although the transcript of the hearing identifies Mr. Pittan as "Kirk", *see* RR-I at 25, petitioner has submitted a letter
from Mr. Pittan dated September 20, 2002, which is signed "Curt", (*see* Ex. 2 submitted with Pet.).  The spelling
contained in the official hearing transcript is utilized herein.

cooperative", had substance abuse problems as well as a history of physical, emotional, and sexual abuse, and would not receive necessary treatment in prison for his non-substance abuse problems. *Id.* at 30-32.  Petitioner's mother verified that he had been physically abused and had substance abuse problems.  *Id.* at 38-42.  She further testified that he does "real well" on medicine "prescribed by MHMR [(Mental Health and Mental Retardation)], Hunt County", and "one-on-one counseling with Evelyn Hare" *Id.* at 42.  The friend testified that petitioner had substance abuse problems.  *Id.* at 43-44.  Petitioner testified that he was sexually abused by his stepbrother, has had a history of substance abuse, was "a client of MHMR" for almost six years for child abuse and post-traumatic stress disorder but was unable to reveal his history of sexual abuse to his counselor Evelyn Hare", and was able to discuss such abuse for the first time with Counselor Pittan.[5]  *Id.* at 46-49.  On cross-examination he testified that he has "a record of being good . . . a record of going to MHMR . . . a record of being clean for five years." *Id.* at 57.  He further testified on cross-examination that he had "made strides towards recovery" during his eight years on probation when he learned of programs like MHMR. *Id.* at 58.

After hearing the foregoing testimony, the court revoked petitioner's probation and entered a finding of guilt with respect to the original offense of aggravated robbery.  *Id.* at 63; Nunc Pro Tunc J. Adjudicating Guilt, attached to *Ex parte Royale*, No. 58,817-01, slip op. at 1 (Tex. Crim. App. May 12, 2004).  Petitioner pled true to the second enhancement paragraph, *i.e.*, the prior burglary conviction in California, and not true to the prior Texas conviction. RR-I at 64. After receiving evidence regarding the challenged prior Texas conviction, the court found the second indictment

---

[5] Interestingly, petitioner concluded his testimony by stating that "prior to revealing" the sexual abuse to Mr. Pittan, he had only told Evelyn Hare.  *See* RR-I at 60.

3

paragraph true and the third paragraph not true. *Id.* at 69. It sentenced petitioner to twenty-five years imprisonment. *Id.* at 76; Nunc Pro Tunc J. Adjudicating Guilt.

On January 23, 2003, counsel for petitioner filed an *Anders*[6] brief in which he informed the appellate court that there were no arguable grounds for appeal. *Royale v. State*, No. 06-02-00170-CR, 2003 WL 21299601, at *1 (Tex. App. – Texarkana June 6, 2003, pet. ref'd). Petitioner thereafter filed a timely *pro se* response in which he claimed that (1) the judgment granting deferred adjudication probation was void; (2) the trial court erred in failing to consider mitigating evidence; and (3) he received ineffective assistance of counsel because his attorney failed to realize the void original judgment. *Id.* The court of appeals found the original judgment valid, no error by the trial court, and no ineffective assistance of counsel; it thus affirmed the judgment of conviction. *Id.* at *2.

On March 22, 2004, petitioner filed a state application for writ of habeas corpus. State Habeas Record[7] at 7. On May 12, 2004, the Texas Court of Criminal Appeals denied the application without written order. *Ex parte Royale*, No. 58,817-01, slip op. at 1 (Tex. Crim. App. May 12, 2004.) On July 1, 2004, petitioner filed the instant petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system). Respondent thereafter filed an answer and provided the state-court records. Petitioner -

---

[6] *See Anders v. California*, 386 U.S. 738 (1967).

[7] The state habeas record consists of two volumes of records that are sequentially numbered from page 1 through page 244.

filed objections to that answer and requested appointment of counsel.  (*See* Petr.'s Obj'ns to Answer [hereinafter Reply].)

### C.  Substantive Issues

In eleven grounds for relief, petitioner raises the following eight claims:  (1) the trial court abused its discretion in relation to the original placement on deferred adjudication probation (Grounds 1 and 10);[8] (2) his guilty plea and subsequent judgment of deferred adjudication probation are invalid, void, and jurisdictionally unauthorized (Grounds 2 and 3);  (3) his original attorney rendered ineffective assistance of counsel prior to and during plea negotiations (Ground 4);  (4) the revocation hearing judge erred by finding "enhancement paragraphs" true (Ground 5);  (5) the State suppressed exculpatory evidence regarding enhancement paragraphs at his revocation hearing (Ground 6);  (6) he received ineffective assistance from the attorney who represented him at the revocation hearing (Ground 7);  (7) he received ineffective assistance from his appellate attorney (Ground 8);  and  (8) paragraph three of the indictment was improperly used for enhancement purposes (Grounds 9 and 11).

### D.  Procedural Issues

Respondent concedes that petitioner has exhausted the claims presented in this action because he raised them in his state application for writ of habeas corpus.  (Answer at 3.)  He contends that Claims 1 through 3 are untimely.  (*See id.* at 3-4.)  Petitioner seeks to avoid the untime-

---

[8] In Ground 10, petitioner also contends that the revocation judge erred with respect to statutory meaning of Tex. Code Crim. Proc. Ann. art. 42.12, §§ 3g and 5, and directs attention to pages fifty-one through fifty-five of his supporting memorandum.  (*See* Pet. at 11.)  Because the supporting memorandum contains no allegation of error by the revocation judge, and because the nature of the argument goes directly toward petitioner's placement on deferred adjudication probation, the Court finds no basis for attributing error to the revocation judge consistent with Ground 10.  Accordingly, Ground 10 need not be considered further.

liness of those claims by framing the issues as a jurisdictional defect that may be challenged anytime. (*See* Reply at 3.)  He further alleges that he was "in a physical and mental illness crisis, that dated back to December 1, 1993."  (*See id.* at 4.)

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).  In this case, the denial of petitioner's state writ constitutes an adjudication on the merits.  *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits).  Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

7

With these AEDPA standards in mind, the Court proceeds to address petitioner's various claims.

## III. DEFERRED ADJUDICATION PROBATION CLAIMS

Petitioner's first three claims relate to his placement on deferred adjudication probation. He argues abuse of discretion by the trial court, invalid and void plea and subsequent placement on deferred adjudication probation, and ineffective assistance of counsel in failing to recognize such invalidity. In response to respondent's contention that these claims are untimely, petitioner argues that he can raise jurisdictional issues at any time, and that any untimeliness should be excused because he was suffering from physical and mental impairments.

Petitioner did not file his initial three claims within the statutory period of limitations set forth in 28 U.S.C. § 2244(d)(1) as extended by the one-year grace period from the enactment of AEDPA on April 24, 1996, recognized in *Flanagan v. Johnson*, 154 F.3d 196, 202 (5th Cir. 1998). The Fifth Circuit has held that placement on deferred adjudication probation is a final judgment for purposes of AEDPA's statute of limitations. *See Caldwell v. Dretke*, 429 F.3d 521, 528-29 (5th Cir. 2005). Because petitioner filed no appeal from the judgment that placed him on deferred adjudication probation, such judgment became final in October 1994, thirty days after he was placed on deferred adjudication probation.

Petitioner has shown no reason to further delay commencement of the limitations period under § 2244(d)(1). Although he attempts to frame some of his claims as jurisdictional, the state court of appeals specifically rejected his jurisdictional argument. *See Royale v. State*, No. 06-02-00170-CR, 2003 WL 21299601, at *1-2 (Tex. App. – Texarkana June 6, 2003, pet. ref'd). As set forth in the appellate decision, petitioner's placement on deferred adjudication probation was not

8

void for want of jurisdiction under state law. *Id.* It is beyond the scope of federal habeas review, to review the correctness of the state court's interpretation of state law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004). This Court thus defers to the state court's interpretation of state law regarding deferred adjudication probation, and finds no merit to petitioner's jurisdictional arguments.

In light of the applicable grace period, petitioner had until April 24, 1997, to assert Claims 1 through 3, in the absence of statutory or equitable tolling. Because petitioner did not file his state habeas application until March 2004, he is entitled to no statutory tolling under 28 U.S.C. § 2244(d)(2). Furthermore, although the limitations period may be equitably tolled in rare and exceptional circumstances, *see Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000), petitioner presents no circumstances that warrant such tolling.

In support of his assertion that his physical and mental impairments excuse any untimeliness of his claims, petitioner provides a Social Security determination that he has a long history of mental impairments such as a personality disorder, antisocial behavior, and post-traumatic stress disorder, which have rendered him unable to engage in substantial gainful activity. (*See* Ex. 3 provided with Pet.) Although the Social Security determination notes petitioner's allegations that "a back injury, headaches, and mental illness" made him unable to work, the Administrative Law Judge found him disabled solely on his mental impairments. (*See id.*) Petitioner has provided no basis for finding any physical impairment warrants equitable tolling of the limitations period.

The Fifth Circuit Court of Appeals has "recognized the possibility that mental incompetency might support equitable tolling of a limitation period" in the context of § 2254 actions. *See Fisher v. Johnson*, 174 F.3d 710, 715-16 (5th Cir. 1999) (citing *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999)). However, if such equitable tolling is available, it is only available when the

9

asserted "mental illness rendered [the petitioner] unable to pursue his legal rights during the relevant time period." *Reyna v. City of Coppell*, No. 3:00-CV-2100-M, 2001 WL 520805, at *1 (N.D. Tex. May 15, 2001); *see also Hood*, 168 F.3d at 232 (suggesting that a claim of mental incompetency would support equitable tolling, "if the illness . . . prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them"). Although petitioner provided the Social Security determination regarding mental impairments which have rendered him unable to engage in substantial gainful activity, he has not shown that any mental impairments rendered him unable to pursue his legal rights or manage his affairs. The claimed mental impairments entitle petitioner to no equitable tolling.

For the foregoing reasons, the Court finds Claims 1 through 3 untimely.

## IV. REVOCATION AND SENTENCING CLAIMS

In Claims 4, 5, 6, and 8, petitioner asserts various claims related to the revocation of his probation and sentencing. He claims that the revocation hearing judge erred by finding "enhance-ment paragraphs" true (Claim 4); the State suppressed evidence regarding enhancement paragraphs (Claim 5); his revocation attorney rendered ineffective assistance (Claim 6); and the judge improperly used paragraph three of the indictment for enhancement purposes (Claim 8).

## A.  Enhancement Paragraphs

To the extent that petitioner's fourth, fifth and eighth claims relate to the third enhancement paragraph, the Court finds no basis for habeas relief. By finding that enhancement paragraph not true, the trial court removed any potential basis for habeas relief based upon such paragraph. Because petitioner's basis for Claim 8 rests solely upon use of the third enhancement paragraph, such claim entitles petitioner to no federal habeas relief.

10

To the extent Claims 4 and 5 relate to the second enhancement paragraph, however, petitioner waived such claims by voluntarily pleading true to the enhancement paragraph.  By pleading true, a defendant concedes that he in fact has a prior conviction that can be used to enhance his sentence on the current conviction.  *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988).  He also waives any complaints about the validity of the prior conviction.  *Id.*; *Johnson v. Puckett*, 930 F.2d 445, 449-50 (5th Cir. 1991); *Zales v. Henderson*, 433 F.2d 20, 24 (5th Cir. 1970). Petitioner does not challenge the voluntariness of his plea of true to the second enhancement paragraph.[9]

Furthermore, the decision to deny habeas relief at the state level does not appear inconsistent with any applicable Supreme Court precedent.  The decision appears to involve no unreasonable application of any Supreme Court precedent.  The adjudication of the claim did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court.  Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on Claims 4, 5 and 8 raised in the instant petition.

## B. Ineffective Assistance of Revocation Counsel

In Claim 6, petitioner argues that his revocation attorney rendered ineffective assistance by (1) failing to investigate the enhancement paragraphs and (2) failing to interview and present testimony from his MHMR counselor, Evelyn Hare.

To successfully state a claim of ineffective assistance of counsel under existing precedent of the United States Supreme Court, petitioner must demonstrate (1) that counsel's performance was

---

[9] The Fifth Circuit considers the "totality of the circumstances" to determine whether a criminal defendant has voluntarily and intelligently pled true to enhancement paragraphs.  *See Holloway*, 838 F.2d at 793.  Nothing of record indicates that petitioner involuntarily pled true.

deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

In determining whether a petitioner has established prejudice, courts consider whether the petitioner has shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). To show prejudice in the sentencing context, petitioner must demonstrate "a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh." *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993); *see also United States v. Grammas*, 376 F.3d 433, 438 n.4 (5th Cir. 2004) (holding that *Spriggs* survived *Glover v. United States*, 531 U.S. 198 (2001) in the § 2254 context). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

1. *Investigation of Enhancement Paragraphs*

Petitioner asserts that inadequate investigation by his revocation attorney resulted in a failure to discover that the second enhancement paragraph was void because the California conviction alleged in that paragraph did not become final prior to the conviction alleged in the third enhancement paragraph. He further asserts that counsel failed to require the State to prove the second enhancement paragraph.

Petitioner in this case pled guilty to aggravated robbery. Such offense "is a felony of the first degree." Tex. Penal Code § 29.03(b) (Vernon 2003). Under Texas law, the punishment for a first degree felony ranges from five years to life imprisonment. *Id.* § 12.32(a). The minimum sentence increases to fifteen years for repeat offenders, *i.e.*, when "the defendant has been once before convicted of any felony." *Id.* § 12.42(c) (Vernon Supp. 1993). The minimum sentence further increases to twenty-five years imprisonment for habitual offenders, *i.e.*, when "the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final." *See id.* § 12.42(d). The timing requirements of § 12.42(d) do not invalidate an otherwise valid enhancement paragraph merely because one of the alleged enhancement paragraphs is found to be not true – in such circumstances, § 12.42(c) provides the minimum sentence. *See Mikel v. State*, 167 S.W.3d 556, 558-59 (Tex. App. – Houston [14th Dist.] 2005, no pet.).

Petitioner successfully challenged one enhancement paragraph and pled true to the other enhancement paragraph. He now urges the Court to find that such success rendered his attorney ineffective in that he did not challenge the other paragraph on grounds that such paragraph did not satisfy the timing requirements of § 12.42(d). However, once petitioner successfully challenged one

13

enhancement paragraph, the timing requirements were rendered immaterial because § 12.42(c) became the statutory basis for enhancing petitioner's sentence as a repeat offender. Consequently, counsel did not render deficient representation by failing to challenge the remaining enhancement paragraph or failing to require the State to prove the enhancement paragraph. The trial court, furthermore, sentenced petitioner to twenty-five years imprisonment – a sentence ten years above the statutory minimum for repeat offenders – thus indicating an independent determination by the trial court that twenty-five years imprisonment was the proper sentence for the offense regardless of the minimum sentence dictated by § 12.42(c). Petitioner has shown no reasonable probability of a lesser sentence even had counsel succeeded with challenging both enhancement paragraphs. This claim of ineffective assistance entitles petitioner to no federal habeas relief.

### 2. *Presentation of Testimony*

Petitioner argues that his attorney rendered ineffective assistance by failing to interview his prior counsel, Evelyn Hare, and failing to call her to testify at the revocation/sentencing hearing. He contends that her testimony at his third revocation resulted in his continuance on probation.

"Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (citations omitted).

In this instance, witnesses other than Ms. Hare provided testimony that petitioner had been receiving treatment from MHMR. A review of the presented testimony shows a clear strategy to argue that petitioner had a "break through" in treatment with Counselor Pittan regarding petitioner's

14

history of sexual abuse. Even if the Court assumes that counsel rendered deficient representation by failing to call Ms. Hare to testify, petitioner has not affirmatively shown a reasonable probability that the outcome of the proceedings would have differed had she testified. He has not shown that her testimony would have resulted in his continuation on probation. That he had been continued on probation three prior times does show a reasonable probability to overcome the fourth motion to revoke. Petitioner also shows no reasonable probability that testimony from Ms. Hare would have resulted in a significantly less harsh sentence. For all of these reasons, this claim of ineffective assistance entitles petitioner to no federal habeas relief.

## V.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In Claim 7, petitioner alleges that his appellate attorney rendered ineffective assistance by filing his *Anders* brief and by failing to investigate the validity of the imposed punishment and failing to argue ineffective assistance of revocation counsel.

The *Strickland* analysis applies "to claims of ineffective assistance of appellate counsel." *Amador v. Quarterman*, 458 F.3d 397, 411 (5th Cir. 2006), *cert. denied*, 127 S. Ct. 2129 (2007). To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). To determine whether appellate counsel was deficient,

15

the Court thus must consider whether the omitted challenge "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *Phillips*, 210 F.3d at 348. To show prejudice from alleged deficient representation on appeal, petitioner must show a reasonable probability that, but for the deficient performance, the outcome of the appeal would have been different. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). Furthermore, when there is no prejudice from an alleged error prior to appeal, there is no "prejudice from an appellate error predicated on the same issue." *Mayabb v. Johnson*, 168 F.3d 863, 869 (5th Cir. 1999).

In this instance, petitioner raised his claims of ineffective assistance of appellate counsel in his state writ. The Texas Court of Criminal Appeals denied that writ.

Because this Court has determined that the claims raised in this petition lack merit, appellate counsel did not render ineffective assistance by not presenting to the court of appeals the alleged ineffective assistance of revocation counsel or a challenge to the validity of the imposed punishment. Appellate counsel is not deficient in failing to present a meritless claim on direct appeal. Furthermore, to show prejudice from a failure to adequately brief an issue for appeal, petitioner must show a reasonable probability that the appeal would have had a different outcome had appellate counsel adequately addressed the issues. Petitioner has made no such showing of prejudice. The claim that his appellate attorney failed to raise claims on appeal thus provides no basis for federal habeas relief.

Further, by denying petitioner's state writ on the findings of the trial court, the Texas Court of Criminal Appeals adjudicated this claim on the merits. The decision of the state court does not appear inconsistent with applicable Supreme Court precedent. The decision does not appear to have involved any unreasonable application of Supreme Court precedent. The adjudication of the claim did not result in a decision that was based upon an unreasonable determination of the facts in light

16

of the evidence presented to the state court.  Under applicable Supreme Court standards and the

AEDPA standards, petitioner is entitled to no habeas relief on this claim.

## VI.  EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL

Upon review of the petition and answer filed herein and the proceedings held in state court

as reflected in the state-court records, an evidentiary hearing appears unnecessary.  The circum-

stances of this case, furthermore, do no warrant appointment of counsel.

## VII.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the

Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. §

2254.

**SIGNED this 22nd day of June, 2007.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recom-
mendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any
party who desires to object to these findings, conclusions and recommendation must file and serve
written objections within ten days after being served with a copy.  A party filing objections must spe-
cifically identify those findings, conclusions, or recommendation to which objections are being made.
The District Court need not consider frivolous, conclusory or general objections.  Failure to file
written objections to the proposed findings, conclusions, and recommendation within ten days after
being served with a copy shall bar the aggrieved party from appealing the factual findings and legal
conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds
of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE